## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

PERSIS INTERNATIONAL, INC., and
EDWARD F. RICHARDS,

                 Plaintiff,

v.

BURGETT, INC.,

                 Defendant.

Judge:   09-cv-07451

Magistrate Judge:

Civil Action No.:

<u>JURY DEMANDED</u>

## <u>COMPLAINT</u>

Plaintiffs PERSIS INTERNATIONAL, INC. and EDWARD F. RICHARDS, through their undersigned counsel, hereby complain against Defendant BURGETT, INC. as follows:

## <u>PARTIES</u>

1.      PERSIS INTERNATIONAL, INC. ("Persis") is a Nevada corporation with its principal place of business located in Chicago, Illinois.

2.      EDWARD F. RICHARDS ("Richards") is an individual residing in Chicago, Illinois, and is the President and sole shareholder of Persis.

3.      BURGETT, INC. ("Burgett") is a California corporation and, on information and belief, has its principal place of business in Sacramento, California.

## <u>JURISDICTION AND VENUE</u>

4.      This action arises under the federal Lanham Act, 15 U.S.C. §1051 *et seq.*, the Illinois Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.*, and the common law of Illinois.

5.      The amount in controversy in this action is in excess of $75,000.

1

6.      This Court has subject matter jurisdiction under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332, 1338 and 1367.

7.      This Court has personal jurisdiction over Burgett by virtue of its purposeful entry into this forum in association with an agreement between Burgett and Richards involving the assignment of certain trademark rights owned by Burgett to Richards, which agreement was negotiated primarily in Illinois and provided for jurisdiction within Illinois, and by virtue of its inducement of infringing sales which it knew or had reason to know would occur in Illinois. Moreover, on information and belief Burgett transacts business in the State of Illinois and maintains overall contacts with the State of Illinois, all commensurate with the United States and Illinois Constitutions, so as to submit itself to the jurisdiction and process of this Court.

**RELEVANT FACTUAL BACKGROUND**

**A.      Persis's Adoption and Use of the SOHMER Trademark**

8.      Persis is engaged in the sale and distribution of pianos.  In June 2001, Persis adopted and began using the SOHMER trademark in interstate commerce in association with the sale of pianos.  Persis has marketed, promoted, distributed and sold pianos under the SOHMER trademark continuously since that date.

9.      The SOHMER trademark is a fanciful and/or arbitrary designation when used in relationship to pianos, and therefore is an inherently distinctive trademark.

10.     Since 2001, Persis has developed substantial and valuable goodwill in its SOHMER trademark through advertising, industry recognition, and a history of providing high quality products under that mark.  As a result, Persis has developed widespread recognition and secondary meaning in its SOHMER trademark throughout the United States, all of which has inured and continues to inure to Persis's substantial benefit.

2

11.     On February 15, 2001, Richards filed United States Trademark Application No. 76/210,248 for the mark SOHMER for use in association with pianos ("the '248 Application") with the United States Patent and Trademark Office ("USPTO").  Richards assigned the '248 Application to Persis on or about October 8, 2002.  As a result, Persis is now the owner of all right, title and interest in and to the SOHMER trademark for pianos in the United States.

## B.     Burgett's Wrongful Acts

12.     In 1996, Burgett acquired certain assets of the bankrupt Mason & Hamlin Corporation, including three United States Trademark Registrations for trademarks which included the designation SOHMER:

> a.     U.S. Reg. No. 119,130 for the mark SOHMER & CO., in stylized script, for pianos;
>
> b.     U.S. Reg. No. 137,464 for the mark SOHMER and Design, for pianos; and
>
> c.     U.S. Reg. No. 1,786,687 for the mark SOHMER, for musical instruments, namely, pianos.

The aforementioned three trademark registrations are referred to below as the "Burgett Registrations."  A fourth United States Trademark Registration for a mark including the designation SOHMER, U.S. Reg. No. 85,691 for the mark SOHMER, in stylized script, for pianos, had been permitted to expire by Burgett's predecessor-in-interest in 1992.

13.     At the time that Burgett acquired the Burgett Registrations from the Mason & Hamlin Corporation, the Mason & Hamlin Corporation had not manufactured, sold or distributed any pianos bearing the SOHMER trademark since at least 1994.

14.     At the time that Burgett acquired the Burgett Registrations from the Mason & Hamlin Corporation, on information and belief Burgett did not have a bona fide intent to resume

3

any use of the SOHMER trademark in commerce in association with the manufacture, sale or distribution of pianos.

16.     Burgett did not use the SOHMER trademark in commerce in association with the manufacture, sale or distribution of pianos between 1996 and 2003, nor did Burgett sell or offer to sell in commerce any associated goods or services, such as piano repair services and piano parts, under the SOHMER trademark during that period.

16.     In 1999, Burgett authorized the destruction of the five valuable original Sohmer plate patterns used by its predecessors to manufacture cast iron piano plates, which are an essential structural component used in the manufacture of SOHMER pianos.

17.     Burgett failed to renew the Burgett Registrations in a timely manner, and by May, 2001 each of those registrations had been canceled by the United States Patent and Trademark Office for failure to renew them.  Burgett does not currently own any active federal registrations for any version of the SOHMER trademark.

18.     As a result of Burgett's and its predecessors' substantial period of non-use of the SOHMER trademark in association with pianos, coupled with Burgett's intent not to resume use of the SOHMER trademark, Burgett abandoned any rights in the SOHMER trademark that it may have acquired from the Mason & Hamlin Corporation.

19.     In August 2000, an article appeared in the publication Music Trades stating that Burgett was discontinuing its KNABE and GEORGE STECK piano brands.  In approximately late 2000, Richards contacted Burgett to discuss the possibility of purchasing the KNABE trademark from Burgett.  Burgett informed Richards that it had agreed to sell the KNABE trademark to another party, but that the GEORGE STECK and SOHMER trademarks were available for purchase.

4

20.     In subsequent communications between Richards and Burgett, Burgett agreed to sell Richards all of Burgett's rights in and to the GEORGE STECK trademark, including several federal registrations and all of the goodwill associated therewith, for a total of $100,000. Pursuant to that agreement, in 2001 Richards presented Burgett with a check in the amount of $33,500 as an initial deposit towards the purchase of Burgett's rights in the GEORGE STECK trademark, which Burgett accepted and subsequently cashed.

21.     Subsequent to their initial agreement in 2001, Richards and Burgett continued to negotiate regarding the other terms of Burgett's sale of the GEORGE STECK trademark to Richards.  However, Burgett ultimately refused to complete the agreed-upon sale or return the $33,500 deposit to Richards, and informed Richards that it would not return that deposit unless Richards withdrew his '248 Application for the SOHMER trademark—notwithstanding the fact that Richards had never discussed, much less agreed, to any such condition.  Burgett never completed the assignment of the GEORGE STECK trademark to Richards or returned the deposit to Richards.  On information and belief, Burgett has retained ownership of the GEORGE STECK trademark and has granted an exclusive license to use that trademark to a third party.

22.     In addition, Burgett offered to sell Richards all of Burgett's rights in and to the SOHMER trademark, including the Burgett Registrations and all of the goodwill associated therewith.  Pursuant to those discussions, Richards made an initial offer to purchase Burgett's rights in the SOHMER trademark.   However, in conducting a thorough due diligence investigation, Richards confirmed that Burgett had not used the SOHMER trademark in commerce since it had acquired the Burgett Registrations from the Mason & Hamlin Corporation, had authorized the destruction of the original Sohmer piano plate patterns, and had failed to renew several of the Burgett Registrations which had subsequently expired.  In view of

5

those facts, Richards informed Burgett of his belief that Burgett had abandoned any rights in the SOHMER trademark which it may have acquired from the Mason & Hamlin Corporation, and thus had no rights in that trademark to convey.

23.     On February 23, 2001, eight days after Richards' filing of the '248 Application, Burgett filed United States Trademark Application No. 76/214,968 ("the '968 Application") for the mark SOHMER for use in association with pianos, on an intent-to-use basis.  On information and belief, as of the filing of its trademark application, Burgett had no bona fide intent to use the SOHMER trademark in commerce in association with the sale or distribution of pianos.

24.     In June 2001, Burgett's '968 Application was initially rejected by the USPTO on the bases that (i) a likelihood of confusion existed with regard to Richards' prior '248 Application, and (ii) the SOHMER mark was primarily merely a surname and therefore not registrable in the absence of a showing of acquired distinctiveness.  Burgett initially attempted to overcome the rejection of its '968 Application by submitting evidence of its ownership of the expired Burgett Registrations as a basis for showing acquired distinctiveness, but the USPTO maintained its surname rejection.  Over the course of two and one-half (2 ½) years, Burgett attempted on several subsequent occasions to demonstrate acquired distinctiveness through the submission of evidence, including a sworn declaration by Burgett's President Gary Burgett, dated May 5, 2003 ("the 1st Burgett Declaration"), which failed to show any use of the SOHMER trademark in commerce, but the USPTO continued to maintain its surname rejection.

25.     In approximately 2002, Burgett entered into a license agreement with Samick Music Corporation ("Samick"), a California corporation engaged in the manufacture and sale of pianos and other musical instruments, whereby Burgett purported to license its non-existent rights in the SOHMER trademark to Samick, for use by Samick in association with the

6

manufacture, sale and distribution of pianos, in return for which Samick would provide compensation to Burgett.

26. At all relevant times during the negotiations between Burgett and Samick leading up to the execution of the aforementioned license agreement, Burgett was fully aware that Persis was using the SOHMER trademark in commerce in association with the sale of pianos, that Persis possessed superior rights in and to the SOHMER trademark, and that Burgett had no valid or enforceable rights in the SOHMER trademark.

27. On July 19-21, 2002 Persis exhibited and offered for sale its SOHMER pianos at the Summer NAMM Show in Nashville, Tennessee, the leading international music product trade show which was attended by music industry executives from throughout the United States and the world. Persis's SOHMER pianos were also listed in the NAMM Show directory which was distributed to attendees at that trade show.

28. In 2002, Samick began promoting its intention to use the SOHMER trademark, and the confusingly similar SOHMER & CO. trademark, in the United States in association with the sale of pianos. In early 2003, Samick began advertising and selling pianos bearing the SOHMER and SOHMER & CO. trademarks in the United States, including through an Internet website available at www.sohmerco.com, which it continues to do to this day.

29. Samick's use of the SOHMER and SOHMER & CO. trademarks in interstate commerce in association with the advertising and sale of pianos constitutes an infringement of Persis's superior rights in the SOHMER trademark, developed through Persis's use of the SOHMER trademark in interstate commerce in association with the sale of pianos since June 2001, under federal and common law.

7

30.     At all relevant times, Burgett's representing to Samick that it had valid and enforceable rights in and to the SOHMER trademark, negotiating and entering into the purported license agreement with Samick, accepting royalty payments from Samick under the purported license agreement, and holding itself out to Samick and the world as the rightful owner of the SOHMER trademark, constituted an inducement of Samick's acts of infringement and unfair competition under federal and common law.

31.     At all relevant times, Burgett's inducement of Samick's acts of infringement and unfair competition was willful and intentional, in bad faith, and in conscious and deliberate disregard of Persis's superior rights in the SOHMER trademark.

32.     On January 9, 2004 Persis sent cease and desist letters to both Samick and Burgett, advising Samick and Burgett that Persis possessed superior rights to use the SOHMER trademark in association with the sale of pianos, and demanding that Samick and Burgett cease their unauthorized use of the SOHMER trademark.  Copies of those cease and desist letters are attached as Exhibit 1 hereto.

33.     On February 5, 2004, Burgett submitted another sworn declaration signed by its President, Gary Burgett ("the 2nd Burgett Declaration"), to the USPTO in association with its prosecution of the '968 Application.  In that declaration, Gary Burgett falsely swore under oath that Burgett and its related companies had engaged in the substantially exclusive and continuous use of the SOHMER trademark in commerce in association with the sale of pianos for at least five years prior to that date.  A copy of the 2nd Burgett Declaration is attached as Exhibit 2 hereto.

34.     Gary Burgett knew that the aforementioned statement in the 2nd Burgett Declaration was false, inasmuch as Burgett had never used the SOHMER trademark in

8

commerce in association with the sale of pianos, and its purported licensee Samick had not used the SOHMER trademark in commerce in association with the sale of pianos prior to 2003. Further, Burgett submitted the 2nd Burgett Declaration to the USPTO with the intent to deceive the USPTO into issuing Burgett a federal trademark registration for the SOHMER mark.

35.     Relying solely on the 2nd Burgett Declaration, the USPTO withdrew its surname refusal and approved Burgett's '928 Application for publication on the Principal Register.  As such, the aforementioned false statement was material to the USPTO's allowance of the '928 Application.  Without the USPTO's allowance of the '928 Application, Persis's own '248 Application would have proceeded to registration.  A copy of the TTAB's August 19, 2008 Order, finding that the approval of the '928 Application for publication was based solely on Burgett's submission of the 2nd Burgett Declaration, is attached as Exhibit 3 hereto.

36.     On October 19, 2004, Persis filed Opposition Proceeding No. 91162715 (the "Opposition Proceeding") with the USPTO Trademark Trial and Appeal Board (TTAB), seeking the dismissal of Burgett's '928 Application due to Burgett's commission of fraud upon the USPTO in association with the filing of the 2nd Burgett Declaration.  The Opposition Proceeding remains pending before the TTAB, but has been suspended as a result of Samick's filing of a motion to suspend proceedings, which was granted by the TTAB on April 20, 2009, in view of related litigation filed by Samick in federal court in Nevada.

37.     Burgett has engaged in a pattern of abusive, dilatory and bad-faith tactics during the course of the Opposition Proceeding, including but not limited to its refusal to respond to Persis's discovery requests in good faith, its knowing submission of false information in submissions to the TTAB and responses to discovery requests, and its repeated attempts to interfere with Persis's efforts to depose Gary Burgett during Persis's testimony period.

CHI 58,811,472v4 11-30-09

38.     On information and belief, on or about March 17, 2009 Burgett executed an assignment of all of its purported rights in and to the SOHMER trademark to Samick.  However, because Burgett had no rights in and to the SOHMER trademark to convey to Samick, the purported assignment was void *ab initio*.  Additionally, the TTAB has kept both Burgett and Samick enjoined as co-defendants in Opposition Proceeding No. 91162715, notwithstanding the purported assignment.

## COUNT I

### Contributory Trademark Infringement and Unfair Competition

39.     Plaintiffs repeat and reallege the allegations contained in the foregoing paragraphs 1-38.

40.     At the time that Burgett entered into the purported license agreement with Samick in November 2001, Burgett and/or its predecessors in interest had abandoned any rights it may have acquired in the SOHMER trademark through its lengthy period of non-use of that mark with no *bona fide* intent to resume use, and had actual and constructive notice of Persis's superior rights in and to the SOHMER trademark.

41.     By representing to Samick that it had valid and enforceable rights in and to the SOHMER trademark, negotiating and entering into the purported license agreement with Samick, accepting royalty payments from Samick under the purported license agreement, and holding itself out to Samick and the world as the rightful owner of the SOHMER trademark, Burgett intentionally induced Samick to infringe Persis's rights in the SOHMER trademark.

42.     By virtue of such conduct, Burgett is contributorily liable for Samick's acts of trademark infringement and unfair competition under federal and common law arising out of

CHI 58,811,472v4 11-30-09

Samick's use of the SOHMER and SOHMER & CO. trademarks in association with the offer for sale, sale and distribution of pianos.

43.    As a result of Burgett's willful and intentional inducement of Samick's infringement, its litigation misconduct before the TTAB during the course of the Opposition Proceeding, and its fraudulent conduct during the course of its efforts to register the SOHMER trademark at the USPTO, this action constitutes an exceptional case under 15 U.S.C. §1117(a).

44.    The acts complained of hereinabove have caused irreparable harm, damage and injury to Persis, and Persis has no adequate remedy at law.

45.    Burgett's acts were in bad faith, in conscious and deliberate disregard of Persis's rights, and were performed with the intention of depriving Persis of its rights.  Accordingly, Burgett's conduct merits, and Persis seeks, an award of punitive damages in an amount sufficient to punish Burgett and deter such conduct in the future.

## COUNT II

### Unfair Competition under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a)

46.    Plaintiffs repeat and reallege the allegations contained in the foregoing paragraphs 1-45.

47.    By submitting the 2nd Burgett Declaration to the USPTO, in which Gary Burgett falsely swore under oath that Burgett and its related companies had engaged in the substantially exclusive and continuous use of the SOHMER trademark in commerce in association with the sale of pianos, Burgett knowingly made a false or misleading description or representation of fact in commerce.

48.    Further, by representing to Samick that it had valid and enforceable rights in and to the SOHMER trademark, negotiating and entering into the purported license agreement with

11

Samick, accepting royalty payments from Samick under the purported license agreement, and continuing to hold itself out to Samick and the world as the rightful owner of the SOHMER trademark through at least March 2009, Burgett knowingly made a false or misleading description or representation of fact in commerce.

49.     These false descriptions and representations of fact misrepresented the nature, characteristics, and/or qualities of Burgett's goods, services or commercial activities by implying to the marketplace that Burgett had the superior right to use the SOHMER trademark in commerce in association with the sale of pianos and had been exclusively using the SOHMER trademark in commerce for at least five years.

50.     Burgett's conduct complained of hereinabove constitutes unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

51.     By reason of and as a direct result of the above identified acts of unfair competition, Burgett has caused Persis substantial and irreparable harm, the full extent of which is currently unknown.

52.     The acts complained of hereinabove have caused irreparable harm, damage and injury to Persis, and Persis has no adequate remedy at law.

**COUNT III**

**Unfair Competition under Illinois Common Law**

53.     Plaintiffs repeat and reallege the allegations contained in the foregoing paragraphs 1-52.

54.     Burgett's conduct complained of hereinabove constitutes unfair competition under the common law of Illinois.

CHI 58,811,472v4 11-30-09

55. By reason of and as a direct result of the above identified acts of unfair competition, Burgett has caused Persis substantial and irreparable harm, the full extent of which is currently unknown.

56. The acts complained of hereinabove have caused irreparable harm, damage and injury to Persis, and Persis has no adequate remedy at law.

57. Burgett's acts were in bad faith, in conscious and deliberate disregard of Persis's rights, and were performed with the intention of depriving Persis of its rights. Accordingly, Burgett's conduct merits, and Persis seeks, an award of punitive damages in an amount sufficient to punish Burgett and deter such conduct in the future.

**COUNT IV**

**Violation of Illinois Deceptive Trade Practices Act**

58. Plaintiffs repeat and reallege the allegations contained in the foregoing paragraphs 1-57.

59. Burgett's trademark application and willful false statements made in the prosecution thereof, together with Burgett's willful false statements to Samick and others regarding Burgett's use of the SOHMER trademark, created a likelihood of confusion or of misunderstanding as to the source, sponsorship or approval of Burgett's and/or Persis' goods, as well as a likelihood of confusion or of misunderstanding as to affiliation, connection or association of Burgett with Persis.

60. By engaging in these deceptive trade practices and encouraging Samick to use the SOHMER trademark despite Burgett's knowledge that Persis had rightfully adopted that mark after Burgett's abandonment thereof, Burgett has directed these deceptive trade practices to the

13

market generally, thereby directly implicating the consumer protection concerns invoked by the Illinois Deceptive Trade Practices Act.

61.     Such conduct by Burgett has violated and continues to violate the Illinois Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq*.

62.     The acts complained of hereinabove have caused irreparable harm, damage and injury to Persis, and Persis has no adequate remedy at law.

63.     Burgett's acts were in bad faith, in conscious and deliberate disregard of Persis's rights, and were performed with the intention of depriving Persis of its rights.  Accordingly, Burgett's conduct merits, and Persis seeks, an award of punitive damages in an amount sufficient to punish Burgett and deter such conduct in the future.

## COUNT V

### Unjust Enrichment

64.     Plaintiffs repeat and reallege the allegations contained in the foregoing paragraphs 1-63.

65.     As set forth hereinabove, Burgett agreed to assign its rights in the GEORGE STECK trademark to Richards in return for a payment in the amount of $100,000.

66.     By tendering payment to Burgett in the amount of $33,500 as a deposit toward the purchase of Burgett's rights in the GEORGE STECK trademark, Richards conferred a benefit on Burgett.

67.     Burgett appreciated at the time that it was presented with the aforementioned check that the $33,500 was intended by Richards as a deposit toward the purchase of Burgett's rights in the GEORGE STECK trademark.

14

68.     Burgett accepted and retained the $33,500 deposit from Richards, in accordance with the agreement between Burgett and Richards, but subsequently refused to assign its rights in the GEORGE STECK trademark to Richards in accordance with that agreement, or to return the deposit to Richards.

69.     In so doing, Burgett has retained money rightfully belonging to Richards against the fundamental principles of justice or equity and good conscience, and has thereby been unjustly enriched.

70.     The acts complained of hereinabove have caused irreparable harm, damage and injury to Richards, and Richards has no adequate remedy at law.

## COUNT VI

### Promissory Estoppel

71.     Plaintiffs repeat and reallege the allegations contained in the foregoing paragraphs 1-70.

72.     As set forth hereinabove, Burgett unambiguously agreed to assign its rights in the GEORGE STECK trademark to Richards in return for a payment by Richards in the amount of $100,000.

73.     Richards relied on Burgett's agreement to assign its rights in the GEORGE STECK trademark to Richards, by paying Burgett $33,500 as a deposit towards the purchase of Burgett's rights in that trademark.

74.     Richards' reliance on Burgett's agreement to assign its rights in the GEORGE STECK trademark to Richards was expected and foreseeable by Burgett.

75.     Richards relied on Burgett's agreement to assign its rights in the GEORGE STECK trademark to Richards to Richards' detriment, in that Burgett refused to either complete

the assignment of its rights to Richards or to return the deposit which Richards had paid to Burgett, thereby depriving Richards of his money without the benefit of an assignment of Burgett's rights in the GEORGE STECK trademark.

76.     The acts complained of hereinabove have caused irreparable harm, damage and injury to Richards, and Richards has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Persis prays that this Court grant it the following relief:

A.      A finding that the acts of Burgett constitute contributory trademark infringement and unfair competition in violation of 15 U.S.C. § 1125(a) and the common law of Illinois, and that Burgett is contributorily liable for Samick's acts of trademark infringement and unfair competition;

B.      A permanent injunction restraining and enjoining Burgett, its principals, officers, directors, agents, servants, and employees, as well as any successors and/or assigns of Burgett and all those acting in privity, concert or participation with Burgett, from:

(i)     imitating, copying, duplicating or otherwise making any use of the SOHMER trademark or any mark confusingly similar to the SOHMER trademark;

(ii)    manufacturing, producing, distributing, circulating, selling or otherwise disposing of any product or material which bears any copy or colorable imitation of the SOHMER trademark;

(iii)   using any false designation of origin or false description which can or is likely to lead the trade or public, or individual members thereof, to mistakenly believe that any product or service advertised, promoted, offered or sold by Burgett and/or a

16

purported licensee of Burgett is sponsored, endorsed, connected with, approved or authorized by Persis;

(iv)     engaging in any other activity constituting unfair competition or infringement of the SOHMER trademark or of Persis's rights in, or to use, or to exploit the same; or

(v)      assisting, aiding or abetting another person or business entity in engaging in or performing any of the activities enumerated in subparagraphs (i) through (iv) above.

C.      A finding that Burgett has engaged in acts of unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a);

D.      A finding that Burgett has engaged in acts of unfair competition under the common law of Illinois;

E.      A finding that Burgett has engaged in acts in violation of the Illinois Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.*;

F.      An award to Persis of monetary damages in an amount to be fixed by the Court in its discretion as just, including all of Persis's actual damages and Burgett's profits or gains of any kind resulting from the actions complained of herein, said amount to be trebled, pursuant to 15 U.S.C. § 1117(a) and (b);

G.      A finding that this is an exceptional case under 15 U.S.C. §1117(a), together with an award to Persis of its attorneys' fees and its costs and expenses of litigation, pursuant to 15 U.S.C. §1117(a) and (b) and the common law;

CHI 58,811,472v4 11-30-09

H.     An award of punitive damages resulting from Burgett's conscious and deliberate disregard of Persis's rights in an amount sufficient to punish Burgett and deter such conduct in the future;

I.     An order requiring Burgett and any principals, agents, servants, employees, successors and assigns of and all those in privity or concert with Burgett who receive actual notice of said order, to deliver up for destruction all infringing products and all promotional, advertising and any other printed materials and items of any kind bearing the designations SOHMER or SOHMER & CO. and/or any other mark that is confusingly similar to the SOHMER trademark;

J.     A finding that Burgett has been unjustly enriched at Richards' expense, and that Richards is entitled to a monetary award in an amount sufficient to comprise restitution for the unjust enrichment enjoyed by Burgett, including prejudgment and postjudgment interest thereon, together with Richards' attorneys' fees and costs and expenses of litigation;

K.     A finding that Richards is entitled to a monetary award from Burgett under the doctrine of promissory estoppel, in an amount to be fixed by the Court in its discretion as just, including prejudgment and postjudgment interest thereon, together with Richards' attorneys' fees and costs and expenses of litigation; and

L.     Such other and further relief as the Court may deem just, proper and equitable under the circumstances.

**JURY DEMAND**

Plaintiffs respectfully demand a trial by jury for all of the counts of this Complaint.


Respectfully submitted,

Dated:  November 30, 2009

/s Jeffrey P. Dunning
Jeffrey P. Dunning (IL ARDC 6273364)
Jeffrey G. Mote (IL ARDC 6243534)
Barry R. Horwitz (IL ARDC 6296764)
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, IL  60601
(312) 456-8400

COUNSEL FOR PLAINTIFFS

CHI 58,811,472v4 11-30-09