IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **PERSIS INTERNATIONAL, INC., and, EDWARD F. RICHARDS,** | )<br>)<br>) |
| Plaintiffs, | ) 09 C 7451<br>) |
| v. | ) Judge Ronald A. Guzmán<br>) |
| **BURGETT, INC.,** | )<br>) |
| Defendant. | )<br>) |
| **BURGETT, INC.,** | )<br>) |
| Counterclaimant, | )<br>) |
| v. | )<br>) |
| **EDWARD F. RICHARDS, and PERSIS INTERNATIONAL, INC.,** | )<br>)<br>) |
| Counterdefendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Persis International, Inc., ("Persis") and its President and sole shareholder Edward Richards sued Burgett, Inc. ("Burgett") for trademark infringement, unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a) and Illinois common law and violation of Illinois Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/1 *et seq*. Before the Court is plaintiffs' motion to strike six of defendant's eight affirmative defenses pursuant to Federal Rule of Civil Procedure ("Rule") 12(f). For the reasons provided below, the Court grants in part and denies in part the motion.

**Background**

The plaintiffs allege the following: In 1996, Burgett acquired three U.S. Trademarks involving the designation SOHMER. (Compl. ¶ 15.) Burgett did not use the trademarks between 1996 and 2003. (*Id.* ¶ 18.) In October 2000, Richards contacted Burgett to discuss the possibility of purchasing a different trademark. (*Id.* ¶ 26.) Burgett told him it was not for sale, but offered to sell Richards all of his rights in the SOHMER trademarks, and mailed to Richards an "Executive Summary" detailing the sale and a proposed contract. (*Id.* ¶¶ 27, 30.) After conducting some due diligence, Richards became aware that Burgett had not used the SOHMER trademarks in commerce since it had acquired them and had failed to renew them. (*Id.* ¶ 31.) Because they were not renewed, by May 2001, each had been canceled by the U.S. Patent and Trademark Office ("USPTO"). (*Id.* ¶ 20.) Richards then informed Burgett of his belief that Burgett had abandoned any rights in the SOHMER trademark. (*Id.* ¶ 32.)

On February 15, 2001, Richards filed a U.S. Trademark Application for the mark SOHMER for pianos ("248 Application") with the USPTO. (*Id.* ¶ 9.) Since June 2001, Richards and Persis have marketed, promoted, distributed and sold pianos under the SOHMER trademark. (*Id.* ¶ 12.) On October 8, 2002, Richards assigned the 248 Application to Persis, who is now the owner of all right, title and interest in and to the SOHMER trademark for pianos. (*Id.* ¶ 11.)

On February 23, 2001, eight days after Richards filed the 248 Application, Burgett filed a new application for the SOHMER trademark on an intent-to-use basis ("968 Application"). (*Id.* ¶ 22.) Initially, Burgett's application was rejected by the USPTO on the bases that (i) a likelihood of confusion existed with regard to Richards' "248 Application" and (ii) the SOHMER mark was primarily a surname and therefore not registrable in the absence of an acquired distinctiveness. (*Id.* ¶ 34.) On January 7, 2003, despite its efforts to show distinctiveness, the USPTO issued Burgett a Final Refusal. (*Id.* ¶ 35.)

In 2002, Burgett entered into a license agreement with Samick Music Corporation ("Samick) whereby Burgett licensed its non-existent rights in the SOHMER trademark to Samick for use in the manufacture, sale and distribution of pianos, in return for compensation. (*Id.* ¶ 38.) In 2003, Samick began using the SOHMER and SOHMER & CO. trademarks in its business. (*Id.* ¶ 41.) On January 9, 2004, Persis sent cease-and-desist letters to both Samick and Burgett, advising them that Persis possessed superior rights to use the SOHMER trademark and demanded that they cease their unauthorized use thereof. (*Id.* ¶ 46.)

On February 5, 2004, Burgett submitted another sworn declaration signed by its President, Gary Burgett, to the USPTO in association with its 968 Application. (*Id.* ¶ 47.) In the declaration, Gary Burgett swore under oath that Burgett and its related companies had engaged in exclusive and continuous use of the SOHMER trademark in commerce in association with the sale of pianos for at least five years prior to that date. (*Id.* ¶ 48.) Relying solely on this declaration, the USPTO withdrew its refusal and approved Burgett's 928 Application. (*Id.* ¶ 51.) Without this approval, Persis' believes its own 248 Application would have proceeded to registration in 2004. (*Id.* ¶ 53.) On October 19, 2004, Persis filed an Opposition Proceeding with the USPTO seeking dismissal of Burgett's 928 Application due to Burgett's fraud. (*Id.* ¶ 54.)

On March 17, 2009, Burgett executed an assignment of all of its purported rights in and to the SOHMER trademark, as well as the 928 Application, to Samick. (*Id.* ¶ 56.) On April 15, 2009, Samick filed a complaint against Persis alleging that its use of the SOHMER trademark infringed Samick's rights. (*Id.* ¶ 59.) In December 2009, Samick and Persis entered a settlement agreement whereby Samick assigned the 928 Application to Persis. (*Id.* ¶ 60.) Thus, Persis is now the owner of both the 248 and 928 Applications. (*Id.* ¶ 61.) Thereafter, the USPTO granted

Application 248 which, according to both parties, is now the only registered SOHMER trademark. (Pls.' Mot. at 5; Def.'s Resp. at 5.)

**Discussion**

Rule 12(f) authorizes a court to strike "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Affirmative defenses are pleadings subject to the requirements of the Federal Rules of Civil Procedure. *Bobbitt v. Victorian House, Inc.,* 532 F. Supp. 734, 737 (N.D. Ill. 1982). Consequently, courts in this district have traditionally utilized a three-part inquiry when examining affirmative defenses subject to a motion to strike: (1) "whether the matter is appropriately pleaded as an affirmative defense"-"[o]nly matters that deserve a clear 'no' answer will be stricken to make the pleadings more concise"; (2) "if it is adequately pleaded under the requirements of Rules 8 and 9"-if "inadequately pleaded, [the affirmative defense] will be dismissed without prejudice to enable defendant[ ] to correct that technical deficiency"; and (3) whether the affirmative defense meets the Rule 12(b)(6) standard-"[i]f it is impossible for defendant to prove a set of facts in support of the affirmative defense that would defeat the [c]omplaint, the matter will be stricken as legally insufficient." *Id.* (citations omitted); *see Powell v. W. Asset Mgmt.*, 773 F. Supp. 2d 761, 762 (N.D. Ill. 2011).

**A.     Affirmative Defenses I & IV**

Defendant's Affirmative Defense I states only that plaintiffs' "[c]omplaint and each cause of action alleged therein fails to state a claim upon which relief can be granted," including "injunctive relief or an award of attorney's fees." (Answer at 14.) This affirmative defense simply restates the standard for dismissal under Rule 12(b)(b). As this Court has made clear, such a conclusory statement is insufficient to allege an affirmative defense. *See, e.g.*, *Thomas v. Exxon Mobil Corp.*, No. 07 C 7131, 2009 WL 377334, at *2 (N.D. Ill. Feb. 11, 2009); *see also Builders Bank v. First Bank & Trust Co. of Ill.*, No. 03 C 4959, 2004 WL 626827, at *5 (N.D. Ill. Mar. 25, 2004) ("Defenses which are no more than bare bones legal conclusions are not sufficient to survive a motion to strike."). Further, the Court has already denied defendant's 12(b)(6) motion, and stated that only one is allowed per case. For these reasons, the Court strike Affirmative Defense I with prejudice.

The same reasoning applies to Affirmative Defense IV, which alleges that plaintiffs' claims are barred by the doctrine of estoppel. To properly assert an estoppel defense, three elements must be pleaded: (1) an act or misrepresentation made by the opposing party; (2) another party reasonably relies on the act or misrepresentation; and (3) the latter party thereby changes his position for the worse. *Bobbitt*, 532 F. Supp. at 738. First, defendant did not allege that plaintiffs engaged in an affirmative misrepresentation, *i.e.*, promised defendant that they would not sue. *See Jacbos v. Xerox Corp. Long Term Disability Income Plan*, 520 F. Supp. 2d 1022, 1037 (N.D. Ill. 2007) (explaining that the first element of estoppel is a knowing misrepresentation); *Mendrala v. Crown Mortg. Co.*, No. 88 C 7386, 1990 WL 60705, at *4 (N.D. Ill. Apr. 23, 1990) (explaining that a party asserting an estoppel defense must plead its elements with particularity to survive a motion to strike). Instead, defendant only pleads that it "has divested itself of the SOHMER trademark, completed the license agreement, ended production

of SOHMER pianos, and moved on in other areas of investment," and therefore "plaintiffs have waited" too long to file suit. (Answer at 15.) Second, even if plaintiffs had made such a misrepresentation, defendant has also failed to allege that it detrimentally relied on it. *See Citation Cycle Co., Inc. v. Yorke*, 693 F.2d 691, 695 (7th Cir. 1982) ("Estoppel arises . . . when one has so acted as to mislead another and the one thus misled has relied upon the action of the inducing party to his prejudice."(internal quotation omitted)). Therefore, Affirmative Defense IV is stricken without prejudice.

### B. Affirmative Defense II

Affirmative Defense II alleges that plaintiffs' action is barred by the three-year statute of limitations set forth in the Illinois Consumer Fraud and Deceptive Business Practices Act. 815 Ill. Compl. Stat. 505/10a(e). The limitations period starts running when plaintiffs knew or should have known of the injury. *Midland Mgmt. Corp. v. Computer Consoles Inc.*, 837 F. Supp. 886, 887 (N.D. Ill. 2003). It is only through discovery that defendant can determine when plaintiffs knew or reasonably should have known of the claim alleged. *See Builders Bank*, 2004 WL 626827, at *5 (stating that to determine if statute of limitations defense applies one must typically conduct discovery). Because plaintiffs have failed to show that defendant cannot prevail based on this defense, the Court denies the motion to strike Affirmative Defense II.

C.     **Affirmative Defenses V, VI & VII**

Affirmative Defenses V, VI & VII are all based on defendant's assertion that plaintiffs submitted a fraudulent document to the USPTO with their 248 Application, and thus, such application is void. Defendant has since admitted, however, that plaintiff did not submit a fraudulent document with its 248 Application. (Def.'s Resp. at 5.) Rather, defendant argues that the fraudulent document was submitted with a different SOHMER application, which defendant acknowledges is not at issue in this litigation and is not a registered SOHMER trademark. (*Id.* (stating that Application 248 is the only valid SOHMER registration).) Defendant has failed to provide the Court with any information as to how the relevancy the alleged fraudulent documents are relevant to the application or claims at issue. *See* Fed. R. Civ. P. 9(b); *see also Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) (explaining that fraud must be pleaded with particularity). Accordingly, for all of the above reasons, the Court holds that defendant has failed to provide any legal basis for how these so-called affirmative defenses are relevant in this case, and as such, strikes them without prejudice.

**Conclusion**

For the reasons set forth above, the Court grants in part and denies in part plaintiffs' motion to strike certain affirmative defenses [doc. no. 111].

SO ORDERED                              ENTER: September 19, 2011

*Ronald A. Guzman*

**RONALD A. GUZMAN**
**District Judge**