**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **PERSIS INTERNATIONAL, INC., and** | ) | |
| **EDWARD F. RICHARDS,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **09 C 7451** |
| **v.** | ) | |
| | ) | **Judge Ronald A. Guzmán** |
| | ) | |
| **BURGETT, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Persis International, Inc., which sells and distributes pianos, and Edward Richards (collectively, "Persis") filed suit against Burgett, Inc. for contributory trademark infringement and contributory unfair competition under §§ 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a) (Count I), unfair competition under § 43(a) of the Lanham Act, 25 U.S.C. § 1125(a) (Count II), common law unfair competition (Count III), and violation of the Illinois Deceptive Trade Practices Act (Count IV). Burgett counterclaimed for trademark infringement (Count II) and unfair competition by infringement of common law rights (Count III).[1] The parties cross-move for summary judgment as to each of these claims. For the reasons stated below, Persis' motion for summary judgment is granted in part and denied in part and Burgett's motion for summary judgment is granted in part and denied in part.

**I.      Facts**[2]

---

[1]  The other counts of Burgett's counterclaim have been dismissed.

[2]  Both parties filed replies to the responses to their statements of fact. (Dkt. ## 215, 224.) Because these are not called for by the local rules, they have not been considered by the

Persis is a Nevada corporation with its principal place of business in Chicago, Illinois. (Def.'s LR 56.1(a) Stmt. Fact, Dkt. # 202, ¶ 1.) Edward F. Richards resides in Chicago and is the President and sole shareholder of Persis. (*Id*. ¶ 2.) Burgett is a California corporation with its principal place of business in California. (*Id*. ¶ 3.)

A stylized depiction of the trademark SOHMER was first used in connection with the sale of pianos in 1872. (Pls.' LR 56.1(a) Stmt. Fact, Dkt. # 195, ¶ 7.) Prior to May 17, 1996, Mason & Hamlin Corporation was the owner of four SOHMER trademark registrations: (1) U.S. Reg. No. 119,130; (2) U.S. Reg. 137,464; (3) U.S. Reg. No. 1,786,687; and (4) U.S. Reg. No. 85,691. (*Id*. ¶ 8.) In 1996, Burgett acquired certain assets of Mason & Hamlin in bankruptcy, including the first three of the aforementioned SOHMER trademarks ("Burgett registrations"). (*Id*. ¶ 10.) The fourth trademark registration was permitted to expire by Mason & Hamlin in 1992. (*Id*.) Burgett did not maintain its three SOHMER registrations in a timely manner because it failed to file a declaration of continued use and corresponding renewal application. (*Id*. ¶ 11.) Thus, by the end of 2001, each of the registrations had been canceled by the United States Patent and Trademark Office based on the failure to renew. (*Id*.) Between 1996 and March 5, 2001, Burgett did not sell, distribute or manufacture any pianos bearing the SOHMER trademark. (*Id*. ¶ 12.)

Between 1996 and March 11, 2009, Burgett had a sign outside its manufacturing facility in Massachusetts that said "Mason & Hamlin Companies" and underneath in smaller letters stated "Falcone Sohmer."[3] (Def.'s Ex. 6, Ex. 1, photograph of sign.) Between 1996 and November 26, 2001, Burgett failed to execute any license or assignment of rights in the SOHMER trademark in

Court.

_____

[3] Falcone is another manufacturer of pianos.

connection with the sale of pianos. (Pls.' LR 56.1(a) Stmt. Fact, Dkt. # 195, ¶ 14.) In 1999, Burgett authorized the destruction of the five SOHMER plate patterns used by its predecessors to manufacture cast iron piano plates. (*Id*. ¶ 15.) In August 2000, an article appeared in the publication Music Trades stating that Burgett was focusing on its most profitable brands of Pianodisc and Mason & Hamlin while sharply curtailing its Knabe and George Steck piano brands. (*Id*. ¶ 16.) The article makes no mention of Sohmer. (*Id*.)

On February 15, 2001, Richards filed with the USPTO United States Trademark Application No. 76/210,248 for the mark SOHMER on an intent to use basis in association with pianos. (*Id*. ¶ 17.) On February 23, 2001, Richards filed United States Trademark Application No. 76/214,968 for the mark SOHMER on an intent to use basis in association with pianos. (*Id*. ¶ 18.) On March 5, 2001, Burgett sold one piano to one of its employees, Daniel Mattson-Boze, for $600.00. (*Id.* ¶ 19.) Burgett's counsel described the sale to Mattson-Boze as a "special sale" and an "odd bird." (*Id*. ¶ 21.) Gary Burgett testified that, with respect to the piano sold to Mattson-Boze, Burgett (the company) stenciled the SOHMER name on a piano manufactured by Knabe because of advice from their attorney that it needed to "show evidence that you have sold a Sohmer piano." (*Id*. ¶ 22; Burgett Dep. Tr., Pl.'s Ex. 5, at 60.)[4]

On November 26, 2001, Burgett executed a Trademark License and Assignment Agreement with Alliance Music Group, Inc., K.H. Chu, and Robert Jones whereby Burgett granted them an exclusive license of its SOHMER trademark rights. (Pls.' LR 56.1(a) Stmt. Fact, Dkt. # 195, ¶ 27.) In 2002, Alliance Music Group, Inc., K.H. Chu, and Robert Jones were aware

---

[4] Certain of the parties' statements of fact regarding sales of Sohmer pianos have not been included as they are not material to the Court's resolution of the parties' motions.

that Richards had filed a trademark application for and had commenced use of the SOHMER trademark. (*Id.* ¶ 28.) According to Gary Burgett, Burgett had entered into the Agreement in order to sell more PianoDisc player systems. (*Id.* ¶ 29.) The rights acquired by Alliance Music Group, Inc. under the Trademark License and Assignment Agreement were assigned to Samick Music Corporation on March 24, 2003. (*Id.* ¶ 30.) Burgett claims that Samick's sales of SOHMER branded pianos totaled $8,384,032.00 between 2003 and 2009 and that it received approximately $83,000.00 in royalties during that period. (*Id.* ¶ 33.)

At all times between November 26, 2001 and March 17, 2009, Burgett was aware that Persis was using the SOHMER trademark in interstate commerce. (*Id.* ¶ 39.) At all times between December 4, 2001 and December 28, 2009, Samick was aware that Persis was using the SOHMER trademark in interstate commerce. (*Id.* ¶ 40.) Between 2003 and 2009, piano dealers were aware that the SOHMER trademark was being used by both Persis and Burgett (via Samick) in connection with the pianos. (*Id.* ¶ 41.)

On July 25, 2003, Burgett filed United States Trademark Application No. 76/535,595 with the USPTO for the mark SOHMER on an intent to use basis in association with pianos. (*Id.* ¶ 43.) On September 8, 2003, Burgett filed United States Trademark Application No. 76/546,304 for the mark SOHMER & CO. on an intent to use basis in association with pianos with the USPTO. (*Id.* ¶ 44.)

On March 11, 2009, Burgett assigned all of its purported rights in and to the SOHMER trademark, including trademark application Serial Nos. 76/214,968, 76/535,595, and 76/546,304 to Samick Music Corporation and recorded it with the USPTO on March 17, 2009. (*Id.* ¶ 45.) The assignment between Burgett and Samick contains a transfer from Burgett to Samick and its

4

successors of all rights to sue for past, present, and future acts of infringement related to the SOHMER trademark. (*Id*. ¶ 46.) On December 28, 2009, Samick assigned the Burgett Sohmer Application to Persis; thus, an ongoing proceeding between the parties before the Trademark Trial and Appeal Board was dismissed as moot in January 2010. (*Id*. ¶ 47.)

Persis expressly abandoned the Burgett Sohmer Application on May 4, 2010. (*Id*. ¶ 48.) The Persis Sohmer Application matured to Registration No. 3,843,417 on September 7, 2010. (*Id*. ¶ 49.) As a result, Persis currently owns all right, title and interest to the common law and federal trademark rights in the SOHMER mark. (*Id*. ¶ 50.)

**II.      Summary Judgment Standard**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Thus, in order to withstand a motion for summary judgment, the nonmoving party must show that a dispute about a genuine issue of material fact exists. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The nonmoving party may not merely rest upon the allegations or details in his pleading, but instead, must set forth specific facts showing there is a genuine issue for trial. *See Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248. To succeed on a summary judgment motion, the evidence must be such "that [no] reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S at 248.

**III.     Analysis**

A.      Persis' Complaint

1.      Lanham Act Claims (Counts I and II)

5

a.     *Laches and Statute of Limitations*

Burgett contends that Persis' Counts I and II, for contributory trademark infringement and

contributory unfair competition and unfair competition, both under the Lanham Act, are barred by

laches and that Counts III and IV, for common law unfair competition and violation of the Illinois

Deceptive Trade Practices Act, are barred by the statute of limitations.

*Laches*.  Burgett contends that although it sent a cease and desist letter to Edward

Richards, Persis' President, in July 2002, Persis's failure to file suit until November 2009 causes

its infringement claims to be barred by laches.  As noted by the Seventh Circuit,

> [f]or laches to apply in a trademark infringement case, the defendant must show
> that the plaintiff had knowledge of the defendant's use of an allegedly infringing
> mark, that the plaintiff inexcusably delayed in taking action with respect to the
> defendant's use, and that the defendant would be prejudiced by allowing the
> plaintiff to assert its rights at this time.

*Chattanoga Mfg. v. Nike, Inc*., 301 F.3d 789, 792-93 (7th Cir. 2002).  While the parties dispute at

length the dates when Persis should have known of Burgett's infringing use, Burgett notably fails

to discuss any prejudice it suffers or will suffer by allowing Persis to proceed with the

infringement claims at this time.  Accordingly, Burgett's claim of laches is denied.

*Statute of Limitations*.  Burgett next claims that Counts III and IV are barred by the statute

of limitations.  As an initial matter, while Burgett asserts, and Persis does not challenge, that the

applicable statute of limitations for both claims is five years pursuant to 735 Ill. Comp. Stat. 5/13-

205, the Court's research has turned up different limitations periods.  For both the unfair

competition and Illinois Deceptive Trade Practices Act claims, it appears the limitations period is

three years.  *Clever Ideas, Inc. v. Citicorp Diners Club, Inc.,* No. 02 C 5096, 2003 WL 21982141,

at *13 (N.D. Ill. Aug. 20, 2003) ("The three-year statute of limitations under the Illinois Consumer

Fraud and Deceptive Business Practices Act, 815 ILCS 505/10(a)(e), has been applied to the

Illinois Uniform Deceptive Trade Practices Act"); *Reinke & Assocs. Architects Inc. v. Cluxton*,

No. 02 C 0725, 2002 WL 31817982, at *1 (N.D. Ill. Dec. 16, 2002) ("[T]he applicable statute of

limitations [for] a claim of unfair competition in Illinois is three years."). Accordingly, the Court

will apply a three-year limitations period to these claims.

Burgett claims that because Persis knew by June 2002 that Burgett was using the

SOHMER mark but did not file suit until November 2009, the claims are time-barred. Persis

points to *Taylor v. Meirick*, 712 F.2d 1112, 1119 (7th Cir. 1983), in which the Seventh Circuit

stated that infringement is a continuing wrong and therefore the statute does not begin to run until

the last act of infringement.[5] Because Burgett admits that Samick, as its exclusive licensee, sold

pianos through 2009 (Def.'s Resp. Pls.' LR 56.1(a) Stmt., Dkt. # 206, ¶¶ 31, 33), the last act of

alleged infringement took place in 2009, and Persis' November 2009 lawsuit was timely.

Accordingly, the Court denies Burgett's motion for summary judgment as to Persis' Counts III

and IV on laches and statute of limitations grounds.

>    b.    *Did Burgett abandon its trademark rights?*

Both parties move for summary judgment as to Persis' Counts I and II, the Lanham Act

---

[5] The Court notes that while *Taylor* remains good law, other courts disagree with its continuing violation position. *Bridgeport Music, Inc. v. Lorenzo*, 255 F. Supp. 2d 795, 798 n.3 (M.D. Tenn. 2003) ("In *Bridgeport Music, Inc. v. Chrysalis Songs*, Case No. 3:01–0701 . . . this Court declined to follow *Taylor* because its continuing wrong theory has been rejected by every other circuit that has considered it."). Indeed, another court in this district recently stated that:

> [a]lthough *Taylor* is still good law, the Seventh Circuit has subsequently held that a continuing violation is one that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during the limitations period.

*Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, No. 12 C 1010, 2012 WL 3135534, at *5 N.D. Ill. Jul. 31, 2012) (citation and quotation marks omitted).

7

claims, on the merits. For Persis to state a claim under the Lanham Act, it must show that (1) its

trademark is protected and (2) the relevant group of purchasers of the product or service in

question is likely to confuse the alleged infringer's product or service with that of Persis. *Forum*

*Corp. of N. Am. v. Forum Ltd.*, 903 F. 2d 434, 439 (7th Cir. 1990).

The parties apparently do not dispute that confusion existed within the relevant group of

purchasers. Rather, each contends that it had priority of use of the SOHMER trademark.

Specifically, Persis contends that after Burgett acquired the SOHMER rights from Mason &

Hamlin in 1996, it failed to use the SOHMER mark in interstate commerce until 2003 and

therefore abandoned any rights in the SOHMER mark. Persis asserts that it acquired priority of

use of the trademark in June 2001 when it made its first sale in interstate commerce under the

SOHMER trademark after Burgett abandoned it. According to Persis, because Burgett abandoned

the SOHMER marks and induced Samick to sell SOHMER branded pianos with full and complete

knowledge of Persis' rights in the mark, it is liable for contributory infringement and unfair

competition.

Under the Lanham Act:

> A mark shall be deemed to be "abandoned" . . . [w]hen its use has been
> discontinued with intent not to resume such use. Intent not to resume may be
> inferred from circumstances. Nonuse for 3 consecutive years shall be prima facie
> evidence of abandonment. "Use" of a mark means the bona fide use of such mark
> made in the ordinary course of trade, and not made merely to reserve a right in a
> mark.

15 U.S.C. § 1127. A party seeking to show that a mark owner has abandoned the mark must show

actual cessation of use as well as intent not to resume using the mark. *Roulo v. Russ Berrie &*

*Co., Inc*., 886 F.2d 931, 938 (7th Cir. 1989). Persis has the burden to prove by a preponderance of

the evidence that Burgett abandoned its marks. *Id.*

8

Burgett purchased the mark from Mason & Hamlin in 1996. Burgett admits that between 1996 and March 5, 2001, it did not sell, distribute or manufacture any pianos bearing the SOHMER trademark. (Def.'s Resp. Pls.' LR 56.1(a) Stmt., Dkt. # 206, ¶ 12.) In addition, Burgett admits that it did not license any of its rights in the SOHMER trademark during that time. (*Id.* ¶ 14.) Finally, Burgett admits that it in 1999, it authorized the destruction of five Sohmer plate patterns used by its predecessor in the manufacture of Sohmer brand cast iron piano plates. (*Id.* ¶ 15.)[6]

Thus, Persis has presented evidence of three years of non-use and a rebuttable presumption exists that Burgett abandoned its marks. *Specht v. Google,* 758 F. Supp. 2d 570, 594 (N.D. Ill. 2010). The presumption "may be rebutted by evidence explaining the nonuse or demonstrating the lack of an intent not to resume use." *Roulo,* 886 F.2d at 938. While the presumption triggers a requirement that the purported mark owner come forward with evidence, the burden of persuasion remains with the challenger to establish abandonment. *Id.* (in abandonment defense, "the owner of the trademark need only produce evidence to rebut the presumption while the ultimate burden of persuasion rests on the defendant"). Evidence of a lack of intent not to resume use "from the mark owner . . . must amount to more than intent of mere token use of the mark to reserve rights in it. It must be an intent for a bona fide use in the ordinary course of the trade." *Specht,* 758 F. Supp. 2d at 594.

Burgett contends that it had intent to resume use of the trademark as shown by the fact that

---

[6] Burgett contends that the plate patterns were not needed for their manufacturing processes and that it authorized O.S. Kelly Co. to discard the plate patterns because the company was going to start charging rental fees for the plate patterns. (Pls.' Resp. Def.'s LR 56.1 Stmt. Fact, Dkt. # 219-1, ¶¶ 8, 9.)

it displayed a sign with the word "Sohmer" on its manufacturing facility from 1996 to March 2009, when it assigned the trademark to Samick. As to the sign, according to Tom Lagomarsino, Burgett's Vice-President, "[d]uring the years 2000-2008, Burgett, Inc. brought dozens of dealers and wholesalers per year to Burgett, Inc.'s piano factory where the SOHMER sign was present." (Def.'s Ex. 6, Lagomarsino Decl., ¶ 8.) Lagomarsino also testified in his deposition that "dozens of Mason & Hamlin dealers came through our doors, and . . . saw the sign, made inquiries" and that Burgett "offered service to those [customers] in the way of consultation, information on Sohmer pianos. . . ." (Def.'s Ex. 5, Lagomarsino Dep. at 137.) He further testified that "customers that had Sohmer pianos . . . would call in and ask for information about their Sohmer pianos" and Burgett "had experts who actually were functioning in that role." (*Id.*) Gary Burgett likewise states in his declaration that:

> [d]uring the time period of April 5, 1996 to January 2002, Burgett kept the SOHMER trade name alive by displaying a SOHMER sign to scores of piano dealers with notification to them that Burgett, Inc. was the new owner of the SOHMER brand, that Burgett, Inc. was offering a SOHMER license to a qualified manufacturer or distributor, and that Burgett was fielding customer questions regarding SOHMER pianos.

(Def.'s Ex. 7, Burgett Decl., ¶ 6.) In addition, he attests that "[d]uring the time period of April 5, 1996 to January 2002, Burgett kept the SOHMER trade name alive by successfully helping scores of SOHMER customers with piano repair and maintenance issues by instructing them how to fix the problem themselves or referring them to the proper piano technician or piano dealer in their area." (*Id.* ¶ 7.)

Persis contends that the mere posting of a sign is insufficient to establish an intent to resume use. But, as the affidavit and deposition testimony of Lagomarsino and Gary Burgett establish, Burgett posted the sign with the intent to provide service assistance for SOHMER

pianos, which, according to the testimony, it did. Persis responds that the testimony is "self-serving" and fails to demonstrate an "objective intention to resume use." (Pls.' Reply, Dkt. # 217, at 6.) But, as noted by the Seventh Circuit recently, "[t]o say that evidence is 'self-serving' tells us practically nothing: a great deal of perfectly admissible testimony fits this description." *United States v. Sklena*, --- F.3d ----, 2012 WL 3608583, at *7 (7th Cir. Aug. 23, 2012). Nor does Persis offer any basis for its contention that Burgett must show an "objective" intention to resume use or that Lagomarsino and Burgett's testimony fails to so demonstrate.

Moreover, Burgett asserts that it aggressively sought to license the SOHMER trademark from October 2000 to November 2001, when an exclusive license agreement for SOHMER was signed with Samick. Evidence of attempts to license can rebut a presumption of nonuse. *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 956 (7th Cir. 1992). Lagomarsino asserts in his declaration that "[o]n or about October 2000, I personally started an aggressive campaign to license the SOHMER trademark to another piano manufacturer by contacting every piano manufacturer that Burgett, Inc. was aware of who may have had an interest in taking a SOHMER license." (Def.'s Ex. 6, Lagomarsino Decl., ¶ 17.) Similarly, Gary Burgett attests that "[d]uring the time period of April 5, 1996 to January 2002, Burgett, Inc. also searched for a licensee to manufacture SOHMER pianos, where efforts to license SOHMER were maximized by Burgett, Inc. during 1992-2002." (Def.'s Ex. 7, Burgett Decl., ¶ 11.) Burgett contends that it had difficulty licensing the SOHMER mark because of a shortage of licensees willing to take on the high cost of manufacturing pianos. (*Id.* ¶ 12.)[7]

---

[7] Persis argues that the declarations of Burgett and Lagomarsino should be stricken as contradictory to their deposition testimony. However, Persis fails to identify the specific deposition testimony it is referring to. It is not this Court's role to hunt through the deposition

While Persis argues that the licensing efforts cannot count as evidence of the lack of intent not to use because they began one year after Burgett's initial three-year period of non-use, this ignores that: (1) Burgett indicated its intent to resume use starting in 1996 by displaying its sign and providing service assistance to "scores" of customers for their Sohmer pianos, and (2) Gary Burgett attested that it was engaged in an attempt to license since April 1996. The level of proof required to show an intent to resume use is not high. *Fifth Avenue of Long Island Realty Assocs. v. Caruso Mgmt.*, 718 F. Supp. 2d 292, 306 (E.D.N.Y. 2010).

The deposition testimony and declarations of Lagomarsino and Gary Burgett remain unrebutted, and the Court concludes that while Burgett met its burden of production, Persis failed in its ultimate burden of persuasion regarding abandonment. Accordingly, the Court finds that Burgett did not abandon the SOHMER mark.

2.      Common Law Unfair Competition and Illinois Deceptive Trade Practices Act (Counts III and IV)

Because Persis' Lanham Act claims fail, so do the common law unfair competition and Illinois Deceptive Trade Practices Act claims. *M. Arthur Gensler, Jr. & Assocs. Inc. v. Strabala*, 11 C 3945, 2012 WL 600679, at *3 (N.D. Ill. Feb. 21, 2012 (Illinois Deceptive Trade Practices Act claim rises and falls with Lanham Act claims); *Days Inns Worldwide, Inc. v. Lincoln Park Hotels, Inc.*, 500 F. Supp. 2d 770, 774 (N.D. Ill. 2007) ("Common law unfair competition claims are evaluated under the same analysis as the trademark infringement claims").

---

testimony to ascertain whether it contradicts the declarations. Because Persis' motion to strike [213-1] is unsupported by record citations, it is denied.

12

B.    Burgett's Counterclaim[8]

1.    *Motion for Summary Judgment*

Persis contends that Burgett lacks standing to sue for trademark infringement and unfair

competition and infringement, as alleged in Counts II and III of Burgett's counterclaim, because it

assigned its rights to sue to Samick in March 2009.  Specifically, Persis points to the following

provision in the assignment:

> Burgett, Inc. hereby transfers all rights to causes of action and remedies related
> thereto including the right to sue for past, present or future infringement,
> misappropriation or violation of any rights relating to the SOHMER trademarks;
> seek injunctive or declaratory relief, and to protect any and all other rights and
> interest arising out of the SOHMER trademarks.

(Pls.' Ex. 22, at 3.)  Burgett admitted to this statement of fact by Persis.  (Def.'s Resp. Pls.' LR

56.1(a) Stmt., Dkt. #206, ¶ 46.)  Thus, the plain language of the assignment indicates that Burgett

assigned any rights to sue for trademark infringement.

Burgett's arguments to the contrary are unpersuasive.  It first argues that its counterclaim

seeks relief for conduct that occurred prior to the March 2009 assignment;  thus, apparently, the

assignment is inapplicable.  But the assignment plainly states that Burgett transfers its right to sue

for "*past*, present or future infringement." (Pls.' Ex. 22, at 3.) (emphasis added)  Burgett also

argues that because it did not include any other assets in the transfer, it retained its existing claim

for trademark infringement prior to the transfer.  Again, however, this position contravenes the

clear and plain language of the assignment.  Finally, Burgett contends that the Court has the

---

[8]  Burgett inexplicably fails to respond to Persis' motion for summary judgment as to the counterclaims in the summary judgment briefing and instead addresses the merits of Persis' counterclaim arguments in its briefing on Persis' Motion to Impose Rule 11 Sanctions.  Persis then leaves the counterclaims unaddressed in its reply brief.  Accordingly, the Court has referred to Persis's motion for sanctions in addressing Persis' arguments regarding the counterclaim.

equitable power to disregard the terms of the assignment and allow Burgett to sue for trademark infringement. This argument is completely without any legal support and is rejected.

The Court grants Persis' motion for summary judgment as to Counts II and III of Burgett's counterclaim.

### 2. *Persis' Motion for Rule 11 Sanctions*

Persis moves for sanctions under Federal Rule of Civil Procedure 11 for Burgett's prosecution of the purportedly vexatious and frivolous counterclaims. On January 18, 2011, Burgett filed its amended answer and counterclaims. (Dkt. # 106.) The Court granted in part Persis' motion to dismiss all counts of the counterclaims, dismissing Counts I, IV, V, and VI but leaving Counts II and III, the trademark infringement and common law unfair competition and infringement claims. On November 1, 2011, the Court granted Persis leave to file a summary judgment motion with respect to the counterclaims. (Dkt. # 192.) On that same date, counsel for Persis sent counsel for Burgett a letter pursuant to the safe harbor provision of Rule 11(c)(2) indicating its intent to file a Rule 11 motion, a copy of which was attached to the letter, unless Burgett withdrew its counterclaims. (11/1/11 Letter, Dkt. # 197-1.)[9] Persis objected to the continued prosecution of the infringement counterclaims in light of the assignment and characterized the counterclaims as "frivolous" and "completely unsupported by law." (*Id.*) Burgett did not withdraw its counterclaims.

Federal Rule of Civil Procedure 11 empowers the Court to "impose an appropriate sanction on any attorney . . . or party" that has presented a document to the Court "for any improper purpose" such as harassing the opposing party or one that contains unsupported legal or factual

---

[9] It is clear from the tone of the letter that counsels' relationship was acrimonious.

14

assertions. Fed. R. Civ. P. 11(b), (c). "The purpose of both Rule 11 and section 1927 is to deter frivolous litigation and abusive practices by attorneys and to ensure that those who create unnecessary costs also bear them." *Kapco Mfg. Co., Inc. v. C & O Enter., Inc.*, 886 F.2d 1485, 1491 (7th Cir. 1989) (*per curiam*) (citations omitted).

Burgett points to other cases in support of its contention that sanctions are not called for in this circumstances, but these cases are inapposite. For example, in *Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519 (5th Cir. 2002), the court, in remanding a sanctions order, noted that "P&G's belief that it might have standing under the Lanham Act . . . could well be considered reasonable for purposes of § 1927" since the question of standing was "difficult and novel." *Id*. at 531. Here, however, Burgett points to no reasonable argument that it retained the right to sue after assigning those rights to Samick. Nor did Burgett's basis for proceeding with the infringement counterclaims represent a "controversial and unsettled legal theory," which the court in *Procter & Gamble* suggested would not have been an appropriate basis for imposing sanctions. *Id*. at 532 ("A party that predicates its legal claim on a controversial and unsettled legal theory should not face sanctions under either § 1927 or § 1117(a) when the court ultimately rejects the claim."). Finally, in *XCO International v Pacific Scientific Co.*, 369 F.3d 998 (7th Cir. 2004), the Seventh Circuit acknowledged that the counterclaim was "thin" and "border[ed] on the frivolous," but found that a qualifying phrase in the patent assignment agreement was "not entirely clear." *Id*. at 1006. Thus, the *XCO* court concluded that the district court had not abused its discretion in denying the motion for sanctions. *Id*.

Burgett's situation is different. The assignment language is clear, Persis' counsel asked Burgett, apparently on more than one occasion, to withdraw its counterclaims, it did not and it has

15

made no non-frivolous argument in support of rejecting the plain language of the assignment.

Accordingly, the Court grants the motion for Rule 11 sanctions against Burgett and its counsel. An award of attorney's fees is a customary, but not mandatory, sanction. *See Johnson v. A.W. Chesterton Co.*, 18 F.3d 1362, 1366 (7th Cir. 1994) ("[T]he deterrent purpose of the [Rule 11] should be served by imposing a sanction that fits the inappropriate conduct." (quotation omitted)); *Kotsilieris v. Chalmers*, 966 F.2d 1181, 1187-88 (7th Cir. 1992) (stating that "a court may impose a penalty as light as a censure and as heavy as is justified" under section 1927 and Rule 11) (quotation omitted).

The Court directs Burgett and its counsel to pay reasonable attorney's fees associated with the drafting and filing of Persis's Rule 11 motion. Persis is directed to file within 14 days of the date of entry of this order a submission, with attached billing entries, detailing the attorney's fees it incurred in association with the filing of the Rule 11 motion. Upon review of that submission, the Court will determine the amount of the sanction.

## IV.     Conclusion

For the reasons stated above, Persis' motion for summary judgment [193-1] is granted in part and denied in part and Burgett's motion for summary judgment [200-1] is granted. Specifically, Persis' motion for summary judgment on its Counts I through IV is denied while its motion for summary judgment on Burgett's counterclaims is granted. Burgett's motion for summary judgment as to Persis' Counts I through IV is granted. Persis' motion to strike [213-1] is denied for the reasons stated in footnote 7.

Further, the Court grants Persis' motion for Rule 11 sanctions [197-1]. Persis is directed to file within 14 days of the date of entry of this order a submission, with attached billing entries, detailing the attorney's fees it incurred in association with the filing of the Rule 11 motion. All other pending motions are stricken as moot. The Court is directed to enter a Rule 58 judgment and terminate this case from the Court's docket.


**Date**: September 18, 2012

_Ronald A. Guzman_
_____
**United States District Judge**
**Ronald A. Guzman**